[Sac. No. 7668. In Bank. Nov. 24, 1965.]

GEDDES & SMITH, INC., Plaintiff and Respondent, v. SAINT PAUL MERCURY INDEMNITY COMPANY, Defendant and Appellant.

McLaughlin & Russell, McLaughlin, Russell, McCarthy & Kaelin and Jerome M. McLaughlin for Defendant and Appellant.

John T. Rossi, George Nye, George W. Coleman and Mayer & Coleman for Plaintiff and Respondent.

MOSK, J.—Defendant appeals from a judgment for plaintiff in an action to recover on an insurance policy issued by defendant to plaintiff's vendor, California Aluminum Products, Inc. For the second time during this prolific litigation the dispute has reached this court. In our first decision, judgment for defendant was reversed and the case was remanded for further proceedings. (*Geddes & Smith, Inc.* v. *Saint Paul*

*Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881].)
We have concluded that the judgment rendered upon remand
should be affirmed with one modification.

A detailed exposition of the facts may be found in our prior
opinion. Briefly stated, plaintiff, a contractor, purchased
760 doors from California Aluminum Products, Inc. (herein-
after referred to as Aluminum Products) and installed them
in 76 houses which it was building. After the houses had
been completed, serious defects appeared in all the doors.
Plaintiff spent an entire year correcting these defects and,
as a result, was unable to carry on any other business. In
April 1953 plaintiff recovered a judgment for $100,000 against
Aluminum Products; and in the following November this
action was brought against the defendant insurance company
for the amount of that judgment.

Under the terms of the policy defendant agreed to insure
Aluminum Products for all sums which it became obligated to
pay because of injury to or destruction of property, including
the loss of use thereof, caused by accident.[1] Damage to goods
or products manufactured, sold, or distributed by Aluminum
Products was excluded from coverage,[2] and plaintiff concedes
that the original cost of the doors themselves is excluded by
this provision. At the first trial, defendant successfully con-
tended that all other damages awarded in the suit against
Aluminum Products also came within this exclusion, but in
our prior decision we rejected this interpretation and found
that defendant was liable for the expenses incurred in repair-
ing the houses. However, the policy was interpreted as insur-
ing only against damage to physical or tangible property, and
the case was remanded so that the portion of the claimed
damages attributable to plaintiff's loss of profits and goodwill
could be determined. We approved of the rule pronounced
in *Hauenstein* v. *Saint Paul-Mercury Indemnity Co.* (1954)
242 Minn. 354, 358 [65 N.W.2d 122], that the damages should
be measured by the diminution in the value of the building or

[1] Coverage C of the policy obligates defendant ''To pay on behalf of
the Insured all sums which the Insured shall become obligated to pay by
reason of the liability imposed upon him by law or contract for damages
because of injury to or destruction of property, including the loss of use
thereof, caused by accident.''

[2] The exclusion section of the policy provides in relevant portion, ''This
Policy does not apply: . . . (e) under Coverage C, to any injury to or
destruction of (1) any goods or products manufactured, sold, handled
or distributed by the Insured or work completed by the Insured out of
which the accident arises, . . .''

the cost of removing the defective product and restoring the building to its former condition, whichever is less.

On remand, the trial court found that a total of $65,641.75 of the $100,000 damage award was to reimburse plaintiff for its loss of profits and goodwill and for the cost of storing the defective doors; judgment for plaintiff was entered for the balance of $34,358.25. The only issue now before us is whether the trial court correctly applied the measure of damages prescribed in our previous decision.

■ Defendant notes that damages were to be measured by the lesser of two alternatives and contends that the trial court thus erred in failing to make any finding concerning one of these alternatives, i.e., the diminution in the value of the houses. There was no evidence upon which such a finding could have been based, and in the circumstances of the case the failure of the parties to present such evidence is understandable. At the time the houses were completed no defects in the doors had appeared; each of the original doors failed separately over a period of six months. To accurately measure the diminution in the value of the houses, it would appear to have been necessary to appraise each house both before and after the failure of the doors, and such an extensive undertaking clearly would have been impractical and unjustifiably burdensome.

Defendant offered to introduce evidence that none of the houses had been sold for less than the requested purchase price and that there had been no rescission or default in payment by any of the purchasers. The apparent failure of the trial court to rule on the admissibility of this evidence is asserted to be reversible error. However, the fact that the price of the houses remained constant is irrelevant since the doors did not fail until after the houses had been bought. The subsequent failure of the purchasers to rescind is most plausibly explained by the fact that plaintiff, in an attempt to mitigate the damages, replaced the doors as they became defective. The policy of the courts has been to promote mitigation of damages (see *Jordan* v. *Talbot* (1961) 55 Cal.2d 597, 610 [12 Cal.Rptr. 488, 361 P.2d 20]; *Mabb* v. *Stewart* (1905) 147 Cal. 413, 417 [81 P. 1073]; Rest., Contracts, § 336), and this policy would be subverted if the party performing the repairs were required in all cases to present evidence as to the hypothetical value of the property had the defects remained uncorrected.

- In *Pfingsten* v. *Westenhaver* (1952) 39 Cal.2d 12 [244 P.2d

395], the defendant contended that the plaintiff was required to prove that the costs of repair of a truck were less than its diminished value after an accident. The court rejected this argument and said, "When there is a complete lack of evidence tending to show a diminution in value of injured personalty, the court may not assume that the diminution in value was of lesser amount than the proved reasonable cost of necessary repairs." (*Id.* at p. 24; accord, *Smith* v. *Hill* (1965) 237 Cal.App.2d 374, 388 [47 Cal.Rptr. 49]; *Konda* v. *Frumpkin* (1928) 90 Cal.App. 384, 386 [265 P. 955]; *Rhodes* v. *Firestone Tire & Rubber Co.* (1921) 51 Cal.App. 569, 574 [197 P. 392].) A similar rule has been applied in measuring damage to real property. (*Natural Soda Products Co.* v. *City of Los Angeles* (1943) 23 Cal.2d 193, 200-201 [143 P.2d 12]; *Linforth* v. *San Francisco Gas & Electric Co.* (1909) 156 Cal. 58, 62 [103 P. 320, 19 Ann.Cas. 1230]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 367 [28 Cal.Rptr. 357].) Thus the failure of the plaintiff in this case to present evidence concerning the diminished value of the houses will not defeat its recovery.

In regard to the second alternative measure of damages, defendant concedes that the cost of removing the defective doors is recoverable but maintains that the damages awarded should not have included the cost of installing new doors in their place. Defendant interprets the clause in the insurance policy excluding damage to products sold by the insured as excluding all costs of replacement and contends that it is only liable for restoring the houses to their condition prior to the installation of any doors.

In our first decision we held that the policy excluded liability for damage to products sold by the insured but did insure against damage to other property. It was found that the injury to the houses had not been confined to the doors themselves but that other damage had resulted for which defendant is liable. Some doors would not open, making entire rooms unusable; others would not close and, as a result, the homeowners were unable to protect themselves against uninvited intruders or to secure privacy even in their bathrooms. Thus, not only were the doors defective, but the use of substantial portions of the houses was impaired. We also note that there was an early period of time in which the doors did operate properly and that the defects did not appear until sometime after they had been installed. We concluded that the failure of

each door constituted a separate injury or accident for which defendant was liable under its policy.

Since the policy issued by defendant covered the damage to the houses as completed with properly operating doors and since a large portion of the damage to the houses resulted from the fact that many of the doors could not be closed after they failed, it is difficult to accept defendant's contention that the repairs for which it is liable consist only of removing the doors. The "restoration" of the houses to a doorless condition would, if anything, exacerbate the injury.

Defendant cites *Hauenstein* v. *Saint Paul-Mercury Indemnity Co.* (1954) *supra*, 242 Minn. 354, to support its theory of damages. In that case the plaintiff sued for damages caused by the application of defective plaster which shrank and cracked after it had been applied to the walls and ceilings of a hospital. In order to repair the damage, it was necessary to remove the defective plaster and replaster the rooms. It is contended that the Minnesota court held the insurance company liable only for the cost of removing the defective plaster and not for the replastering expense. While the precise facts involved in *Hauenstein* are somewhat debatable, it does seem clear that the building was to be restored to its condition immediately prior to the accident, whether that state included or excluded plaster. Similarly, in the present case this defendant is responsible for the cost of restoring the houses to their condition immediately prior to the failure of the doors, and at that time the houses were equipped with doors which operated properly. Thus, while the cost of the doors themselves is within Exclusion (e) of the policy, defendant is liable for the expense of installing the replacement doors in addition to the cost of removing those that were defective.

A similar result was reached in *Bundy Tubing Co.* v. *Royal Indemnity Co.* (6th Cir. 1962) 298 F.2d 151. The plaintiff in that case manufactured steel tubing used in radiant heating systems. After its installation in the cement floors of buildings, some of this tubing became defective and the manufacturer sued under a policy, similar to the one involved here, for the costs of settling and defending the resultant claims. The court held that the exclusion clause applied to the cost of the tubing itself but that the expense of reinstalling the tubing in the floors was within the terms of the policy. (Accord, *Pittsburgh Plate Glass Co.* v. *Fidelity & Casualty Co. of N.Y.* (3d Cir. 1960) 281 F.2d 538.)

In *Volf* v. *Ocean Accident & Guarantee Corp.* (1958) 50 Cal.2d 373 [325 P.2d 987], a contractor sued his insurer for the cost of repairing a stucco wall which had become cracked. The plaintiff was compelled to apply a new coat of stucco, but he found it unnecessary to remove the original coat. We held that in those circumstances the repairs were within a policy exclusion comparable with Exclusion (e) of the policy issued to Aluminum Products. However, the facts in *Volf* are distinguishable from those involved here. In that case the insured party was the contractor who constructed the wall. Thus the wall itself, as opposed to its constituent materials, could be considered ''work completed by the insured,'' and within the exclusion. In the present case the plaintiff contractor is suing on an insurance policy issued to its supplier, Aluminum Products; and, while the cost of the doors themselves is excluded, the *installation* of the doors was not ''work completed by the insured.'' Also, the injury to the walls in *Volf* caused no damage to, or loss of use of, the interior of the house; the wall itself was the only part of the structure affected in any way. In the case at hand the condition of the doors affected the use of entire rooms, and therefore the damage was not limited to the goods or products supplied by Aluminum Products. *Liberty Building Co.* v. *Royal Indemnity Co.* (1960) 177 Cal. App.2d 583 [2 Cal.Rptr. 329], involved facts very similar to those found in the *Volf* case and can be distinguished on similar grounds.[3]

Defendant next insists that the judgment improperly included costs incurred in repairing defective doors, on the theory that even if the installation of new doors is covered by the policy, repairs to the doors are excluded. Since the judgment does not reimburse plaintiff for any goods or parts supplied by Aluminum Products, the insured party, the other costs of repair incurred by plaintiff are a proper element of damages. Defendant has not demonstrated that part of the judgment was awarded for repairs not connected with the process of removing or replacing the defective doors.

[3]In a recent case in another jurisdiction, *Dakota Block Co.* v. *Western Casualty & Surety Co.* (1965) 81 S.D. —— [132 N.W.2d 826], recovery was allowed for the cost of applying a new exterior to a building even though no other part of the building was affected. The court reasoned that the damage, even though confined to the material supplied by the insured, affected the value of the entire building and therefore was not within the exclusion. This decision cannot be harmonized with the result in *Volf* and would seem to make the exclusion in the policy almost meaningless.

 Defendant also objects to the inclusion in the damages of $18,373.96 for overhead expenses incurred during the time the doors were being replaced. As it is undisputed that plaintiff carried on no other business until this work was completed, there is no problem of allocating these expenses among various projects. However, defendant asserts that this overhead represents an injury to plaintiff's business, and that no part of it is recoverable under our previous decision because it does not constitute damage to physical or tangible property. This contention confuses two issues which should be carefully distinguished: the first concerns the type of injury covered by the policy, and it was in the context of this question that we stated that only damage to physical or tangible property was recoverable; the second is the method by which the damage to the physical property is to be measured in monetary terms.

One of the alternative measures of damage approved in our earlier opinion was the cost of removing the doors and restoring the houses, plus the loss of use thereof. A major element of the repair costs consisted of the wages of the carpenters and other men who actually worked on the houses, and defendant does not deny its liability for these wages. The employment of supervisors, secretaries, and administrators was also required to carry out the repairs. And in order that the work proceed, additional expenses were incurred in placating the homeowners who were threatening immediate legal action. These overhead expenses would seem to be as integral a part of the cost of restoring the houses as were the wages of the carpenters. Neither the salaries of the workmen nor the expenses of overhead are themselves physical property; they are recoverable because they provide a measure of the dollar amount of the injury to the houses. Overhead is distinguished from lost profits and goodwill in that it represents not a potential asset of the business but an essential expense incurred in the performance of the work. Therefore, it would seem that the trial court did not err in including it in the damage award. (See *Grand Trunk Western R. Co.* v. *H. W. Nelson Co.* (6th Cir. 1941) 116 F.2d 823, 839; *Department of Water & Power of City of Los Angeles* v. *United States* (D.C.S.D. Cal. 1955) 131 F.Supp. 329; *United States* v. *Delaware Bay etc. Assn.* (D.C.E.D. Pa. 1935) 10 F.Supp. 43, 45.)

 Finally, the damages include an additional sum of $1,423.80 which plaintiff paid to have the defective doors

shipped. As is pointed out in the prior opinion of this court, expenses which would have been incurred even if the doors had not been installed cannot be considered damage to the houses, and therefore such items are not within the terms of the insurance policy. The freight charges would appear to be such an expense, and thus defendant is not liable therefor.

The judgment is modified by subtracting from the award the freight charges of $1,423.80, and as so modified the judgment is affirmed. Respondent to recover costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.