[Civ. No. 28069.   Second Dist., Div. Three.   Dec. 6, 1965.]

H. L. GOGERTY, Plaintiff and Appellant, v. GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE COR-PORATION, LTD., Defendant and Respondent.

John E. Glover and John P. McGinley for Plaintiff and Appellant.

Crider, Tilson & Ruppe, Edward A. DeBuys and Henry E. Kappler for Defendant and Respondent.

SHINN, P. J.—Appeal by plaintiff Gogerty from a judgment denying recovery upon policies of indemnity insurance issued to him by General Accident etc. Limited. Gogerty was the architect in the construction of a school building for the United States Government. Defendant company issued him two policies which indemnified him against certain losses he might sustain in connection with the performance of his professional services. The provisions of the policies which measure the coverage of Gogerty were that he was insured against liability "1. . . . because of injury to or destruction of tangible property, including the loss of use thereof, all in direct consequence of any negligent act, error or omission of the Insured resulting in accident. . . ." The policies each provided in an exclusionary clause "This insurance does not apply: . . . (e) to loss and expense for additions to, remodeling, demolishing, or rebuilding of any structure as a result of error or omission in professional services, which error or omission does not result in an accident. . . ."

Rogers and Rogers, a copartnership, was the general contractor; Los Angeles Testing Laboratory tested and reported upon concrete which was furnished to Rogers and Rogers by one Holliday; Gogerty, as architect, approved and accepted the concrete which was used in fabrication of certain bents or arches that were incorporated into the building.

Two. actions were brought against Rogers and Rogers, one on behalf of Holliday and the other on behalf of Los Angeles Testing Laboratory. In each case Rogers and Rogers filed a counterclaim against Holliday, Los Angeles Testing Laboratory and Gogerty. It was alleged that concrete that was used in the bents failed to meet the specifications of the building contract; the bents were defective; it was necessary to repair them and Rogers and Rogers did repair them at a cost of $2,810.82. It was also alleged that one or more of the cross-defendants were negligent in permitting the use of the defective concrete and it was alleged that the work was delayed for 10 months at a cost to Rogers and Rogers of $95,000, for all of which judgment was sought.

The foregoing facts were alleged in the complaint in the present action. It was also alleged that when Gogerty was served with the counterclaims he tendered the defense to defendant General Accident which denied liability and refused to defend; plaintiff was compelled to and did employ counsel to defend against the counterclaims and thereby incurred an obligation to pay $10,000 for such services. It was alleged that plaintiff paid $1,875 in compromise and settlement of the counterclaims as against him; plaintiff has demanded of General Accident payment of the sum of $1,875 paid in the settlement, $61.50 costs incurred in the action and $10,000 as and for the liability of plaintiff for attorney's fees. The prayer was for judgment of $11,936.50.

The pretrial order stated the foregoing as the facts of the controversy, and the question was whether plaintiff's loss was within the coverage of the policies.

The parties stipulated that the court should first determine the question of General Accident's liability under the provisions of the policies quoted above upon the facts alleged in the complaint.

The court held that the use of inferior concrete, which rendered the bents defective under the specifications, did not cause injury to or destruction of property as a direct consequence of any negligent act, error or omission of Gogerty *"resulting in accident."* (Italics ours.) In other words, the court held there was no accident.

The court also held that even if the faulty construction of the bents was injury *"resulting in accident"* the claim of $2,810.82 as the cost of alteration and repair was excluded as to Gogerty under exclusion (e) for the reason that it was not claimed that the property, other than the bents, was dam-

aged. (Italics ours.) The two rulings present the only questions to be answered on the appeal.

We are forced to disagree with the holding of the learned trial judge that the fault of Gogerty in the course of his professional services did not result in accident.

In *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558 [334 P.2d 881], plaintiff, a contractor, had purchased a large number of aluminum doors from Aluminum Products and installed them in houses under construction. Within a few days up to six months defects in the doors appeared in a variety of ways which rendered them unusable and necessitated their removal and replacement. Geddes & Smith, Inc. sued Aluminum Products and was awarded judgment in the sum of $100,000 and costs, for which amount Geddes & Smith, Inc. sued the insurer of Aluminum Products, Saint Paul Mercury Indemnity Co. The policy in question, provided in pertinent part, under coverage ''C'' that the insurer agreed '' 'To pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or contract because of injury to or destruction of property, including the loss of use thereof, caused by accident.' '' The court said ''It [accident] 'includes *any event which takes place without the foresight or expectation of the person acted upon or affected* by the event.' '' [Citations.]

'' 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' [Citation.] The door failures were unexpected, undesigned, and unforeseen. They were not the result of normal deterioration, but occurred long before any properly constructed door might be expected to wear out or collapse. Moreover, they occurred suddenly. It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm (cf., *Canadian Radium & Uranium Corp.* v. *Indemnity Ins. Co.*, 342 Ill.App. 456 [97 N.E.2d 132, 139-140]). but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred.'' The court said further: ''Had the door failure resulted in direct physical injury to the houses, the accidental cause of the harm would be obvious, but other harms flowing from the door failures were

likewise accidentally caused.'' With respect to plaintiff's claim that the houses were injured the court held there was injury and damage and that it consisted of diminution of the market value of the houses or the cost of placing the buildings in the condition they would have been in had doors been supplied which were free from defects. In reaching this conclusion the court quoted with approval from the opinion in *Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 [65 N.W.2d 122, 126] in which it was held that the use of plaster in a building which was so defective as to necessitate its removal and the replastering of walls and ceilings was injury and damage to property resulting from accident.

The judgment in *Geddes* was affirmed as to the liability of Saint Paul but was reversed for a redetermination of the issue of damages. Upon the retrial the court found that a total of $65,641.75 of the $100,000 damage award was to reimburse plaintiff for its loss of profits and goodwill and for the cost of storing the defective doors, and judgment was entered for $34,358.25. Upon the second appeal of Saint Paul, the judgment, with slight modification, was affirmed. (*Geddes & Smith, Inc.* v. *Saint Paul Mercury Indem. Co.*, 63 Cal.2d 602 [47 Cal.Rptr. 564, 407 P.2d 868].) Upon the appeal the defendant contended that the cost of repairing the doors was excluded from coverage of the policy, but the contention was rejected; it was held that the cost of repair was an element of damage; the cost consisted not only of the wages of carpenters and other workmen but also the necessary expense of supervisors, secretaries and administrators whose services were necessary to carry out the repairs.

■ Certainly the use by Rogers and Rogers of inferior concrete in constructing the bents, and their incorporation into the building, caused, in part, by the fault of Gogerty in approving the use of the defective concrete, was an occurrence which was unforseen, unexpected and undesigned. It was an accident within the coverage of the policies.

■ Whether a building has been injured by the use in its construction of defective material is ordinarily a question of fact, but it is a question of law if the fault is unquestionably so great as to materially depreciate the value of the building or create a condition which demands correction. And we cannot doubt that in the present case the incorporation into the school building of the defective bents caused injury and damage to the structure through the creation of an intolerable condition. ■ It is a matter of common knowledge

that for many years it has been recognized that public buildings, especially school buildings, must be able to withstand earthquake shocks, and the invariable practice has been to require construction that will provide such security.  ■■  The specifications for concrete construction in the government contract were intended to accomplish that purpose. It was the judgment of the men who had the responsibility of seeing that the contract was fully performed to determine whether the defective bents should be allowed to remain as a part of the building or must be brought into conformity with the requirements of the contract. Their determination that the bents must be replaced or repaired was evidence that allowing them to remain without repair would have resulted in injury to the building. The injury occurred when the bents were made a part of the building, and the condition could be corrected only by their repair or replacement. The measures that were taken to correct an unsatisfactory and possibly hazardous condition were at the expense of the contractor and represented a loss that was due to the damage to the building. It is immaterial that the bents were not torn out and rebuilt, but were repaired while they remained in place. In many cases the cost of repair would be slight while the expense of removal and replacement would be great and wholly unnecessary. Since the bents were repaired at an obvious saving, the defendant-insurer was the gainer.

As previously stated, the court also held that even if the incorporation of the bents into the building was the result of accident, there was no damage to property within the meaning of the policies, because no property, other than the bents, themselves, was damaged. We have already stated our disagreement with this contention, but it is due to the trial judge that his reasons for that conclusion be stated. The court relied upon the opinion of the court in *Volf* v. *Ocean Acc. & Guar. Co.*, 50 Cal.2d 373 [325 P.2d 987]. This was a case in which a contractor used defective plaster and corrected the condition by applying a new coat of stucco without removing the old. He was insured by a policy which excluded indemnity for injury to or destruction of ''work completed by the insured.'' Recovery of the cost of the repairs was denied for the reason that no injury was shown except to the plastering.

In the second opinion in *Geddes* it was explained that in *Volf* the wall itself upon which the defective plaster was used could be considered ''work completed by the insured,''

and within the exclusion. There is no such exclusionary clause in Gogerty's policies. Upon the contrary, the exclusionary clause (e) quoted above, implies that "additions to, remodeling, demolishing or rebuilding" made necessary by error in professional services is within the indemnity provision if the error results in an accident.

We hold that upon the facts stated in the counterclaims and the terms of plaintiff's policies there was a loss sustained by Gogerty which was covered by his policies and that General Accident had a duty to defend against the counterclaims.

There is another matter which deserves mention. The counterclaims alleged that Rogers and Rogers suffered damage in the amount of $95,000 caused by a delay of 10 months in completion of the school building, which delay was due to the faulty construction of the bents. In its memorandum decision the court stated "Damages for delay cannot be said to be an 'injury to or destruction of tangible property' and hence does not appear to be a loss within the insuring agreement."

It is stated by appellant, and also appears from the pretrial order, and the stipulation which limited the issues submitted for the trial court's decision, that the question whether damages for the alleged delay was within the coverage of the policies, was not one of the issues submitted to the court. There was no finding made or conclusion drawn with respect to that issue and the court expressly declined to find whether Gogerty employed counsel to defend against the counterclaims or whether he paid $1,875 and court costs in settlement of the same.

The judgment does not purport to delimit the coverage of the policies or to determine any question of damages. Those questions have been reserved for further proceedings in the trial court.

The judgment is reversed

Ford, J., and Kaus, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 2, 1966.