GOODYEAR RUBBER & SUPPLY COM-
PANY, INC., a corporation,
Plaintiff-Appellant,

v.

GREAT AMERICAN INSURANCE COM-
PANY, a corporation, Defendant-
Appellee.

No. 26694.

United States Court of Appeals,
Ninth Circuit.

Jan. 5, 1973.

Thomas S. Moore (argued), George M. Joseph, of Morrison & Bailey, Morton H. Zalutsky, Portland, Or., for plaintiff-appellant.

John J. Higgins (argued), Stuart Hall, David J. Krieger, of Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for defendant-appellee.

Before BROWNING, CARTER and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This declaratory judgment action, based on diversity of citizenship, was tried on stipulated facts. The plaintiff below, Goodyear, sought an interpretation of a policy of liability insurance issued to it by the defendant Great American and an adjudication that a damage claim made against Goodyear by a third party was within the coverage of the policy. Goodyear also sought a ruling that Great American had an obligation to defend a suit brought on that claim and that, because of its failure to do so, Great American was liable for the costs of the defense of the original suit. The district court entered judgment for the defendant, concluding that there was no obligation on the part of Great American to defend the original suit or to pay any portion of the settlement. Goodyear appeals and we reverse.

The parties have stipulated that Goodyear fabricated and sold hatch gasket

material to Northwest Marine which installed it in Portland, Oregon on the S. S. Arizona, an ocean going vessel. On the next voyage of the Arizona, the material was found to be defective. The vessel was returned to Portland and Northwest removed and replaced the gaskets.

Northwest then sued Goodyear for the cost of new gasket material and also for the cost of removing the defective material and replacing it with the new material. Northwest recovered a judgment and the suit was then settled, pending appeal, for $20,000, of which $14,500 represented costs and labor involved in removing and replacing the defective material. The Northwest suit was tendered to Great American which declined to defend. Goodyear incurred attorneys' fees and costs of $6,924.96 in defending the Northwest suit. No question is raised concerning the reasonableness of this amount.

The policy of insurance provided in part:

*Coverage D-Property Damage Liability—Except Automobile*: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

## EXCLUSIONS

*This policy does not apply:* . . .

(j) under coverage D, to injury to or destruction of . . . (4) any goods, products or containers thereof manufactured . . . by the named insured, . . ., out of which the accident arises; . . .

In the suit by Northwest against Goodyear, the complaint alleged the breach by Goodyear of various express and implied warranties and consequent "damage to the S. S. Arizona." When the defense was tendered to Great American it refused, stating in part:

". . . your client's insurance policy . . . contains an exclusion under which coverage does not apply to injury to or destruction of any goods, or products manufactured, sold, handled or distributed by the insured, or work completed by the insured . . . ."

Great American's refusal of the tender was wrongful. It was not the allegation of a breach of warranty but the allegation of damages which raised the duty to defend. Northwest's complaint alleged that the S. S. Arizona had been damaged in the amount of $42,836. Of this, $37,336 represented the costs and labor involved in removing and replacing the defective material. Only $5,500 represented the cost of the new gasket.

■ Under well-settled principles, when one product is integrated into a larger entity and the product proves defective, the damage is considered as damage to the entity to the extent that the market value of the entity is reduced by an amount in excess of the value of the defective product.[1]

■ Northwest's complaint alleges damage to the S. S. Arizona far in excess of the cost of new gaskets. The complaint thus alleged damage to property other than the product defectively manufactured by Goodyear and Great American should have accepted the tender of defense.[2]

1. *See* Geddes & Smith, Inc. v. St. Paul-Mercury Indemnity Co., 51 Cal.2d 588, 334 P.2d 881 (1959), subsequent opinion 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (1965); and Hauenstein v. St. Paul-Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122 (1954). *See also* Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co., 444 F.2d 1286, 1288 (3d Cir. 1971).

2. *See* Hauenstein v. St. Paul-Mercury Indemnity Co., *supra*, and Geddes & Smith, Inc. v. St. Paul-Mercury Indemnity Co., *supra*. *See also* Western Casualty and Surety Co. v. Polar Panel Co., 457 F.2d 957 (8th Cir. 1972); Bowman Steel Corp. v. Lumbermen's Mutual Casualty Co., 364 F.2d 246 (3d Cir. 1966); Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir. 1962); and Pittsburgh

In Hauenstein v. St. Paul-Mercury Indemnity Co., 242 Minn. 354, 65 N.W. 2d 122 (1954), the insured sold acoustical plaster to a contractor who used it in building a hospital. The plaster shrunk and cracked and the contractor had to remove it and replaster. Under a policy similar to the one before us, the court held that the cost of the plaster itself was subject to the exclusion, but the cost of removal and replacement, as well as loss of use, were chargeable against the insured. The court said:

> "No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser.

> \*       \*       \*       \*       \*

> "Although there is no liability for damage to the plaster itself as a product handled and distributed by the plaintiff, the insurer is liable under its insurance contract for accidental damage to property caused by the application of the defective plaster." *Hauenstein, supra,* at 125–126 [footnote omitted].

*Hauenstein* has been followed by numerous other courts. In Geddes & Smith, Inc. v. St. Paul-Mercury Indem-

nity Co.,[3] the California Supreme Court, in an opinion by Chief Justice Traynor, held that the insurer was liable to the manufacturer of defective doors for a judgment the latter was bound to pay on account of damage to the homes in which the doors were installed. The damage to the homes was the cost of removing and replacing the defective doors. The cost of the doors themselves was excluded. This was made clear in the later opinion of Justice Mosk,[4] wherein it was stated:

> "Similarly, in the present case this defendant is responsible for the cost of restoring the houses to their condition immediately prior to the failure of the doors, and at that time the houses were equipped with doors which operated properly. Thus, while the cost of the doors themselves is within Exclusion (e) of the policy, defendant is liable for the expense of installing the replacement doors in addition to the cost of removing those that were defective."[5]

Great American's reliance on Liberty Building Co. v. Royal Indemnity Co., 177 Cal.App.2d 583, 2 Cal.Rptr. 329 (1961), is misplaced. In that case the insured was the builder of a house which later turned out to have a defective stucco covering. The owner's claim for the damage to the house was held to be within the policy exclusion. This holding is eminently logical in view of the fact that the *entire house* was a product supplied by the insured. But that case is not controlling here where only the gasket material and not the entire ship was a product supplied by Goodyear and thus subject to the exclusion.

It follows from what was said above that Great American is liable not only for the cost of the defense of the North-

---

Plate Glass Co. v. Fidelity and Casualty Co., 281 F.2d 538 (3d Cir. 1960).

3.  51 Cal.2d 588, 334 P.2d 881 (1959).

4.  63 Cal.2d 602, 47 Cal.Rptr. 564, 568, 407 P.2d 868, 872 (1965).

5.  Also in point are Western Casualty and Surety Co. v. Polar Panel Co., *supra* (de-

fective insulating panels) ; Bowman Steel Corp. v. Lumbermen's Mutual Casualty Co., *supra* (defective laminated siding) ; Bundy Tubing Co. v. Royal Indemnity Co., *supra* (defective tubing in radiant heating system) ; and Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co., *supra* (paint flaked off jalousies).

west suit, but also for that part of the settlement which represents the cost of removing and replacing the defective gaskets. Therefore, we need not consider Goodyear's contention that even if there was no duty to pay the judgment there was nevertheless a duty to defend. There was a duty to pay the judgment (or, in this case, settlement). *A fortiori* there was a duty to defend.

Reversed and remanded for the entry of judgment in favor of Goodyear in the amount of $21,424.96, plus the expenses of this action and appeal, if Goodyear is entitled to these under Oregon law.