720 F.2d 1016
 LASSEN CANYON NURSERY, INC., Plaintiff-Appellant,
v.
ROYAL INSURANCE COMPANY OF AMERICA (formerly Royal Globe
Insurance Co.), National Union Fire Insurance
Company of Pittsburgh, Pa., and Does
I-X, inclusive, Defendants-Appellees.
 No. 81-4602.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1982.
Decided Sept. 23, 1983.
 
 Michael F. Kelley, Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., for plaintiff-appellant.
 Cynthia H. Plevin, Sedgwick, Detert, Moran & Arnold, David W. Gordon, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, HUG, and NORRIS, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Plaintiff Lassen (insured) appeals from summary judgment in favor of defendants Royal and National (insurers). The district court held that neither insurer had a duty to defend Lassen in a suit alleging violation of federal anti-trust law (the underlying litigation). We affirm.
 
 
 2
 As there are no material issues of fact, the only question for review is whether defendants prevail as a matter of law. Ferguson v. Flying Tiger Line, Inc., 688 F.2d 1320, 1322 (9th Cir.1982). We will uphold the determination of a district judge as to the law of the state in which the district is located unless such determination is clearly wrong. Anderson v. Allstate Insurance Co., 630 F.2d 677, 682 (9th Cir.1980).
 
 
 3
 An insurer must furnish a defense when it learns facts creating potential liability. Giddings v. Industrial Indemn. Co., 112 Cal.App.3d 213, 217, 169 Cal.Rptr. 278, 280 (1980). Both policies covered physical damage to tangible property, including loss of use. Unlike Giddings, Lassen has satisfied each policy's stipulation that injury be caused by an "occurrence" (damage neither expected nor intended by the insured) in that purely unintentional acts may violate antitrust law. Rex Chainbelt Inc. v. Harco Products, Inc., 512 F.2d 993, 1006 (9th Cir.), cert. denied, 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 49 (1975).
 
 
 4
 It is generally accepted that economic losses such as lost profit or good will are not property damage within the coverage of these policies. Giddings, 112 Cal.App.3d at 219, 169 Cal.Rptr. at 281. The diminution in value of fixed assets due to loss of use, however, has been allowed as an element of damage in an antitrust action. Story Parchment Paper Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 567, 51 S.Ct. 248, 252, 75 L.Ed. 544 (1931). Such an intangible economic loss may be covered if it provides a measure of damage to tangible property. Giddings, 112 Cal.App.3d at 219, 169 Cal.Rptr. at 281. Geddes & Smith, Inc. v. St. Paul Mercury Indemn. Co., 63 Cal.2d 602, 609, 47 Cal.Rptr. 564, 568, 334 P.2d 881, 885 (1959).
 
 
 5
 The question presented in this appeal, however, is not whether the diminution in value of tangible property caused by Lassen's intentional or inadvertent conduct is covered by the policies, but rather, whether the insurers have been fairly apprised of facts creating potential liability under the policies. Ritchie v. Anchor Casualty Co., 135 Cal.App.2d 245, 251, 286 P.2d 1000, 1004 (1955). Gray v. Zurich, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 177 (1966). In Story Parchment and Geddes, the fact that tangible property was reduced in value was obvious, and the insurers were fully aware of the insureds' claims for this type of property damage.
 
 
 6
 A thorough review of plaintiffs' complaint in the underlying action and other information available to the insurers about the nature of the action reveals no claim which could reasonably be construed as seeking recovery for property damage as defined in the policies. Lassen's assertions to the contrary are not based on facts, but instead, rest entirely on speculation and conjecture. Giddings, 112 Cal.App.3d at 220, 169 Cal.Rptr. at 282.
 
 
 7
 We agree with the district court that allegations in the complaint in the underlying action allow for no interpretation other than claims for strictly economic losses. Additionally, in response to a request to describe each item of tangible property alleged to have been damaged in the underlying action, Lassen listed purely economic losses. Response to Interrogatory No. 20, Excerpt of Record 120. Finally, Lassen stated, without equivocation, that plaintiff in the underlying action was not claiming loss of use of tangible property. Response to Interrogatory No. 21, Excerpt of Record 121.
 
 
 8
 Nor is there any indication that plaintiff in the underlying action actually suffered damage to tangible property. Lassen offered an affidavit by an expert in the field of business valuation stating that the earnings, not the value of any fixed assets of the business in the underlying action, were the true measure of its value. Lassen then attempted to equate the "total destruction of a business with no fixed assets, or the total loss of earning power of that business, as in the present case," with damage to tangible property. Lassen's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Excerpt of Record 152 (emphasis added). This can only reasonably be read as a claim for noncovered economic losses from a business that has no appreciable fixed assets on which to claim injury.
 
 
 9
 An insurer, however, will not be compelled to defend its insured when the potential for liability is so "tenuous and farfetched." Giddings, 112 Cal.App.3d at 220, 169 Cal.Rptr. at 282. Accordingly, we hold that insurers fully performed their duty to ascertain facts on which potential liability may have been based, and were warranted in their conclusion that no injury within the coverage of the policies had occurred.
 
 
 10
 The terms and extent of coverage of both policies are clear and unambiguous. Consequently, Lassen's president's expectations as to protection are irrelevant. Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 105, 419 P.2d 168, 169.
 
 
 11
 Since the insurers had no duty to defend Lassen, we do not reach the issue of whether public policy prohibits an insurer from defending an insured in a suit alleging violation of antitrust law.
 
 
 12
 AFFIRMED, costs to appellee.