RIGNEY, APPELLANT, *v.* THE CINCINNATI STREET RAILWAY CO., APPELLEE.

(No. 7930—Decided December 20, 1954.)

*Messrs. Ginocchio & Ginocchio,* for appellant.
*Mr. C. R. Beirne,* for appellee.

MATTHEWS, P. J. The plaintiff, appellant herein, obtained a judgment on a verdict for $10,000. Her appeal raises the sole question of the validity of the ruling of the trial court in holding that under the circumstances of this case there could be no recovery of anything for loss of compensation caused by her inability to discharge the duties of her position as a civil employee of the United States government in the Treasury Department, which she occupied at the time of the incident resulting in her injuries. The defendant, appellee herein, while challenging the correctness of the plaintiff's ground for reversal, asserts that the judgment should be reversed and final judgment rendered for it on the whole record which is before the court. A separate cross-appeal was filed, but has been dismissed, the defendant preferring to rely on the jurisdiction of this court to render that judgment which the law and facts require. For authority for this position the case of *Hrovat* v. *Cleveland Ry. Co.,* 125 Ohio St., 67, 180 N. E., 549, 84 A. L. R., 215, is relied upon, which held, as stated in the second paragraph of the syllabus:

"In an error proceeding, where it appears that the entire record is before the reviewing court, including the ruling by the trial court on motions for a directed verdict, and in the reviewing court an unsuccessful litigant seeks final judgment in his favor upon the uncontroverted facts, such litigant, if he be a defendant in error, need not file a cross-petition in error in order to secure final judgment."

Notwithstanding the change in the law of appellate procedure since the foregoing opinion, we are of the opinion that its applicability has not been affected and that it still expresses the law of Ohio.

It is the contention of the defendant that the plaintiff having alleged specific acts of negligence in her petition and having failed to prove any single allegation, while, on the contrary, the evidence shows that defendant was not negligent in any respect, it was the duty of the trial court to have entered final judgment for the defendant, and, therefore, it is the duty

of this court on this appeal to correct the error by entering the judgment in its favor which the trial court should have entered. Defendant's conclusion is predicated upon three assumptions. The first is that the law precludes recourse to the doctrine of *res ipsa loquitur* in all actions in which specific acts of negligence are pleaded, as in this case. The second assumption is that there is no evidence tending to prove any of the specifically pleaded acts of negligence. The third assumption is that the allegation that the bus was in a mechanically defective condition rendering it unfit and dangerous for the carrying of passengers upon the public highway, and that, therefore, it was negligent to use it, did not enlarge the issue or furnish the basis for the application of the doctrine of *res ipsa loquitur*, because the bus—the instrumentality—was not in the exclusive control of the defendant.

(1) Is it the law of Ohio that the allegation of specific acts of negligence excludes the application of *res ipsa loquitur*?

It is true that in a case in which the pleadings and proof relate to specifically alleged acts of negligence there is no basis upon which to predicate an inference of negligence other than the evidence relating to the specifically alleged acts. The Supreme Court of Ohio so construed the record as to bring *Winslow* v. *Ohio Bus Line Co.*, 148 Ohio St., 101, 73 N. E. (2d), 504, within this category. In answer to the argument that the case called for the application of the rule of *res ipsa loquitur*, the court held, as stated in the first paragraph of the syllabus:

"The doctrine of *res ipsa loquitur* is not applicable in a case where the petition and proof disclose that plaintiff had knowledge of the facts and circumstances showing the claimed negligence of defendant."

The court in the *Winslow case* analyzed the evidence and found that "no reasonable inference can be drawn but that appellee's servant was negligent." That the court had no intention of overruling or qualifying any of its prior decisions on the subject is made manifest by the fact that it cited most of them with approval. The court cited with approval the case of *Fink* v. *New York Central Rd. Co.*, 144 Ohio St., 1, 56 N. E. (2d), 456, in which the petition and proof did not present specific acts of negligence, but where, nevertheless, the court in the *Fink case*, at

page 7, took occasion to say: "This state has adopted the rule, which is supported by the great weight of authority, that if the allegations of the petition and the proof in support thereof call for the application of the rule it should be applied irrespective of whether the petition contains allegations of specific acts of negligence."

The court in the *Winslow case* also approved without qualification the case of *Scovanner* v. *Toelke,* 119 Ohio St., 256, 163 N. E., 493, in which the petition contained allegations of specific acts of negligence very similar to those in the petition in this case, and, if defendant's analysis of the evidence is accepted, also similar, in that there would be no evidence to support the specific allegations of negligence. Notwithstanding the absence of evidence of the specific acts of negligence, the court affirmed the judgment for the plaintiff by recourse to the doctrine of *res ipsa loquitur.*

See, also, *Manker* v. *Shaffer,* 96 Ohio App., 350, 121 N. E. (2d), 908, in which the doctrine of *res ipsa loquitur* was applied notwithstanding the fact that specific acts of negligence were alleged.

So we conclude that in this case there is nothing in the pleadings and proof to preclude the application of the doctrine of *res ipsa loquitur* if the evidence otherwise justifies it.

(2) and (3) Let us look now at the allegations in the petition and the evidence in this case. We find that the plaintiff alleges that the bus in which she was riding as a passenger was in a "mechanically defective condition which rendered it unfit and dangerous to be operated on the highways for the purpose of carrying passengers for hire," and that due to its mechanically defective condition, the wheels locked in their then set direction. At the same time the operator of said bus, noting the locking of said wheels, "carelessly and negligently failed to straighten said bus in its course on the highway, and carelessly and negligently failed to stop said bus," and as a result the bus left the highway and collided with a tree to the south of the highway.

The plaintiff testified that "as the bus made this turn it sounded like some of the mechanism fell out of the bus." We

take that to indicate that there was an actual defect in the mechanism of the bus. The operator of defendant's bus seemed to confirm that. He testified that the bus was carrying an unusual load of passengers, and that as he was going around a curve the steering wheel locked and he was unable to control the bus. This testimony seems to us to corroborate the plaintiff's testimony that something happened to the mechanism of the bus, indicating that the bus was defective, and tending to prove the plaintiff's allegation that the bus was in "a mechanically defective condition which rendered it unfit and dangerous * * * for the purpose of carrying passengers for hire."

This presents an entirely different situation than that presented in the *Winslow case* and, also, than cases in which sole reliance was placed upon the rule of *res ipsa loquitur*. In the *Winslow case* there was no evidence of any defective mechanism, and, as the evidence was construed by the Supreme Court, there was no evidence that the operator lost control of the bus at any time. In fact it would seem that the Supreme Court regarded the collision as resulting from the deliberate action of the operator.

As already noted, there is evidence of a mechanical defect which relieves the plaintiff from the necessity of relying on *res ipsa loquitur*. The fact that the bus left the highway and collided with a tree would be sufficient to require explanation by defendant. The case of *Glaze* v. *City of Cleveland*, 56 Ohio Law Abs., 414, 92 N. E. (2d), 416, is entirely dissimilar. In that case a passenger was injured by a window falling upon her arm. There was no evidence of a defect, and both passengers and operator manipulated the window. No one other than the operator had any control over the course of the bus. Furthermore, the defendant in this case is placed in the dilemma of either admitting that there was a defective mechanism, or that the operator was negligent. There is no other explanation. It was the duty of the operator to take into consideration the condition of the street.

Finally, we are of the opinion that under the allegations of the plaintiff's petition, she was not precluded from relying on the doctrine of *res ipsa loquitur*. She alleged that there was a

defective mechanism and that defendant was negligent in operating its bus in that condition, but she did not allege the specific act of negligence in that regard. So far as we know none of the cases holds that such an allegation precludes reliance on the doctrine of *res ipsa loquitur*.

Upon this phase of the case we conclude that the court did not err in overruling the defendant's motions to arrest the case.

At the time of her injuries, the plaintiff was employed by the United States of America as the Chief of the Accounts Section, Income Tax Division of the Office of the Collector of Internal Revenue, at Cincinnati, Ohio. As an element of her damage, resulting from defendant's negligence, she alleged that her injuries prevented her from working for a period of 130 and 3/4 days, "to her loss of compensation in the amount of $2,489.48," and that she would suffer further loss of employment and compensation in the future because of her injuries.

There was evidence of physical injuries that would prevent the plaintiff from, or hamper her in, the discharge of the duties of her employment for a period of time, which it is not necessary to determine exactly in view of the issue raised.

Over the plaintiff's objection it was developed on cross-examination of the plaintiff and an official of the United States government employed in the Office of Internal Revenue that during her absence from work the plaintiff received the same income from the United States government that she would have received had she been engaged in the discharge of the duties of her position. This resulted from the fact that under the law she was entitled to a certain amount of time each year known as annual leave and sick leave, and, also, under the law she was entitled to and had allowed this annual and sick leave to accumulate to her credit, so that at the time of her injuries there stood to her credit 90 days of unused annual and sick leave and a current leave of 26 days per year and 15 sick days leave, both with pay, and that the income she received from the United States government during her disability was based on her accumulated annual and sick leaves and was charged against and deducted therefrom, so that her accumulated credits were entirely exhausted. It appears also that the plaintiff

upon leaving her employment would be entitled to receive from the United States government an amount of money calculated on the basis of her salary, multiplied by the time represented by the number of days to her credit in her annual and sick leave account.

At the request of the defendant the court gave two special charges on the subject of damages. The first was: "I charge you that you should disregard the claim which the plaintiff has made in her petition for loss of compensation from her employment because the evidence fails to support such a claim." The second special charge on this subject was: "The plaintiff has made the following claim in her petition: 'As a result of said injuries, the term of her working life has been shortened, with the result that in the future she will not be able to be gainfully employed for as long a time as she would have been employed had she not suffered the injuries herein mentioned.' Now I charge you, as a matter of law, that you should disregard this claim which has been made by the plaintiff in her petition because the evidence fails to support it."

The plaintiff excepted to the giving of these special charges, and by various requests sought to have the court charge generally on the subject of compensation for loss of wages and charges against her sick and annual leave accounts, reserving her right to have reviewed the rulings of the court on the element of damages as disclosed by the evidence.

As we construe this record, the plaintiff had, by reason of past services and as a part of her compensation, accumulated, and there stood to her credit upon her employer's books, a credit of 90 days leave from her employment without interruption of her salary, and that upon severance of the relation of employer and employee, she was entitled, as of right, to receive pay for the period of such credit as though she had actually discharged the duties of her position during such period.

The question presented by the record is whether a wrongdoer is entitled to have the damage resulting from his wrong diminished by payments made by the employer to the employee and charged against the accumulated sick and annual leave credits of the employee, resulting in extinguishment of such credits.

If we have properly analyzed this record, it seems clear that the wrongdoer has no such right.

By the great weight of the authorities it is broadly held that the liability of a third party wrongdoer is not affected by the receipt by the injured person of wages or salary from his employer for the time during which he was unable to perform the duties of his employment because of his injuries. The authorities on this general subject are collected in the A. L. R. annotation to the case of *Cunnien* v. *Superior Iron Works Co.*, 175 Wis., 172, 184 N. W., 767, 18 A. L. R., 667, where it is said at page 678:

"Although the courts of different jurisdictions are not in entire agreement on the question, the amount of a recovery from a third person who is responsible for a personal injury is, in most jurisdictions, held not to be affected by the receipt by the plaintiff, from his employer, of wages or salary for the period during which he has suffered from the injury."

See, also, 15 American Jurisprudence, 616, Section 200.

We think it is quite clear that recovery against the tortfeasor is not affected by payment by the employer of wages or salary or any other thing of value due and owing to the employee at the time he received his incapacitating injuries. Anything earned prior to the injuries certainly cannot be related by any sound reasoning process to the loss of wages or salary during the period of incapacity following the injuries.

In 4 Restatement of the Law of Torts, Section 920, Comment *e*, it is said, at page 620:

"Where a person has been disabled and hence cannot work but derives an income during the period of disability from a contract of insurance *or from a contract of employment which requires payment during such period*, his income is not the result of earnings but of previous contractual arrangements made for his own benefit, not the tortfeasor's." (Emphasis added.)

But it was contended in oral argument that Ohio has adopted the minority rule as exemplified in the case of *Drinkwater* v. *Dinsmore*, 80 N. Y., 390, 36 A. R., 624, and the case of *Pittsburgh, C. & St. L. Ry. Co.* v. *Fagin*, 3 N. P. (N. S.), 30, 15 O. D., 605, affirmed in 74 Ohio St., 491, 78 N. E., 1135, and in 13 Ohio

Jurisprudence, 207, Section 116, which authorities were relied upon to support the contention. It is true that in 13 Ohio Jurisprudence, 207, Section 116, it is said:

"On the question of the effect of the receipt of salary or wages by an injured person, to reduce his recovery against the person causing the injury, the courts are somewhat divided; the majority rule is that such payment does not affect the recovery. In Ohio, however, the rule apparently is otherwise; in a decision of the Superior Court of Cincinnati, it is stated that, in the absence of a claim for exemplary damages, an injured party who receives wages for the time lost on account of the injury cannot recover wages for time lost as an item of damages, and this decision was affirmed without opinion by the Supreme Court of Ohio."

It will be found, however, that this cautious statement is supported by the single citation of *Pittsburgh, C. & St. L. Ry. Co.* v. *Fagin, supra,* and that that decision is not, either expressly or impliedly, an approval of the rule by the Supreme Court of Ohio. Fagin was a public officer of the city of Cincinnati, and while on duty he was struck by one of the defendant's engines and injured. He filed suit in the Superior Court of Cincinnati and recovered a verdict and judgment for $750. The court refused a special charge that: "The plaintiff, if you find for him, can not recover for loss of time as prayed for in the petition." On error to the Superior Court of Cincinnati, in General Term, that court held that the special charge should have been given and granted a remittitur of the amount of the salary. The plaintiff did not challenge the correctness of this ruling. However, the defendant did prosecute error to the Supreme Court and that court affirmed the judgment without opinion in 74 Ohio St., 491. It is clear that as the ruling of the Superior Court in General Term reduced the amount of the judgment against it, the defendant, no prejudicial error was committed against it, and the affirmance of the judgment was in no sense an affirmance of the correctness of the remittitur. It should be said that the exact condition under which the plaintiff's wages were paid to him does not appear either in the opinion of the Superior Court or in the printed record in the

Supreme Court of Ohio. There is an implication in the printed record that perhaps the rule applicable to salaries of public officers stated in 43 American Jurisprudence, 161, Section 379, might apply, where it is stated that public officers are obliged to devote their attention to the duties of their office but that "this does not mean he shall lose * * * his right to the emoluments or salary connected with it because he may be absent or away from the office for a short, occasional, or even a protracted, period of time and does not during such period of time personally give his time and attention to the duties of the office." If so, there would be no loss of salary and, of course, the court would be justified in excluding it as an element of damage.

In any event, we are of opinion that the Supreme Court has not promulgated any rule on this subject contrary to the weight of authority elsewhere, and that in reaching a conclusion in this case we should be controlled by the greater weight of authority, which, we believe, is in accordance with reason and justice.

For these reasons, the judgment is reversed and the cause remanded for a new trial in accordance with this opinion.

*Judgment reversed and cause remanded.*

Ross and HILDEBRANT, JJ., concur.