UNITED STATES of America, Plaintiff,

The State of Michigan et al.,
Plaintiffs-Intervenors,

State of Minnesota and Minnesota Pollution Control Agency, Plaintiffs,

v.

RESERVE MINING COMPANY et al., Defendants,

Northeastern Minnesota Development Association et al.,
Defendants-Intervenors.

No. 5–72–Civil–19.

United States District Court,
D. Minnesota,
Fifth Division.

Nov. 24, 1976.

John Varnum, Washington, D.C., for plaintiff United States.

Michael H. Ferring, St. Paul, Minn., for the United States Army Corps of Engineers.

Byron E. Starns, Philip J. Olfelt, C. Paul Faraci and James M. Schoessler, St. Paul, Minn., for plaintiff State of Minnesota.

William P. Dinan, Robert E. Asleson, Daniel Berglund, Duluth, Minn., for plaintiff City of Duluth.

Howard J. Vogel, Minneapolis, Minn., for plaintiffs Minnesota Environmental Law Institute, Inc., Northern Environmental Council, Save Lake Superior Ass'n, Michigan Environmental Student Confederation, Inc., and Environmental Defense Fund, Inc.

Edward T. Fride, Duluth, Minn., and Maclay R. Hyde, Minneapolis, Minn., for defendant Reserve Mining Co.

William T. Egan, Minneapolis, Minn., for defendant Republic Steel Co.

John B. Gordon and G. Alan Cunningham, Minneapolis, Minn., for defendant Armco Steel Co.

Wayne G. Johnson, Silver Bay, Minn., for defendants Village of Beaver Bay, Silver Bay Chamber of Commerce, Village of Silver Bay, Town of Beaver Bay, Lax Lake Property Owners Ass'n.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In order to guarantee safe drinking water to residents of communities on the North Shore of Lake Superior, the court ordered a temporary water filtration program, pending construction of permanent filtration facilities, and, because of its expertise in the area, the United States Army Corps of Engineers was ordered to initially finance and manage this program. *Reserve Mining Co. v. Lord,* 529 F.2d 181, 183 (8th Cir. 1976). Last February this court concluded that defendants Reserve, Republic and Armco were liable for the costs of this interim filtration program and ordered them to reimburse the Corps for expenses it incurred in this project. The parties were ordered to meet to determine the exact amount due the Corps. If the parties were unable to agree, the court indicated that, upon proper motion, it would take evidence to determine the exact amount due. *United States v. Reserve Mining Co.,* 408 F.Supp. 1212, 1219 (D.Minn.1976).

The parties have not been able to agree upon the exact amount due but have filed a stipulation which, they contend, makes an evidentiary hearing unnecessary. This stipulation indicates that representatives of the parties met and agreed on the amount of expenses incurred by the Corps in connection with this program and divided these expenses into two categories, "direct" and "indirect." Defendants have agreed to reimburse the Corps for the direct expenses which include costs incurred in letting contracts for filter design and actual filter purchase, installation and maintenance but they have refused to be responsible for those expenses defined as indirect. Although the stipulation does not clearly state and explain all items included in the indirect expense category, it seems that the parties are talking about overhead, broadly defined. Among the items included in this category are the following:

1. a pro rata portion of the salaries of regular Corps employees who have worked on the filtration program, determined by reference to time cards, work sheets and other documents;

2. a pro rata portion of the government's contributions to employee life and health insurance plans, social security (for temporary employees) etc.;

3. overhead, defined to include administrative salaries, materials and supplies.[1]

---

1. Schedule C to the stipulation lists "Functional Costs" which presumably comprise overhead

and it also contains the cryptic statement "Chief of Engr., Washington · determines the

Defendants contend that, because these indirect expenses would have been substantially incurred by the Corps even in the absence of the water filtration program, they should not be liable for them. The Corps counters by arguing that if the court had required defendants to operate the filtration program through contracts with private companies, they would have paid these overhead expenses as part of the contract costs. Therefore, to allow defendants to escape this obligation would allow them an unearned windfall at the expense of the taxpayers of this country. Finally, at oral argument on this motion, counsel for the Corps stated that because of the expense it has incurred to date in administering this program, it has had to defer until next fiscal year a number of functions it would have done this year.

Thus, the issue presented for resolution is may a service agency, such as the Corps, when it is ordered because of its expertise and resources to correct a problem, recover from those causing the problem, in addition to its direct costs, its overhead. The only case on point cited by either party is *United States v. Denver & R. G. R.R.*, C74–145 (D.Utah 1975). In that case, the court allowed the Bureau of Land Management to recover the costs, including "overhead or indirect costs," incurred in suppressing a forest fire negligently started by defendant.

The logic of this holding and the government's position in this case is compelling. Were it not for defendants' discharges into Lake Superior, the filtration program would not be necessary. *United States v. Reserve Mining Co., supra*, at 1219. Therefore, the court ordered defendants to reimburse the Corps for expenses incurred in this project. *Id.* Although it is true that many of these indirect costs would have incurred regardless of defendants' discharg-

es, they are real costs and are part of the total cost of providing clean, safe water to the residents of the affected communities. *See also The L–1, The Philadelphia. United States v. Delaware Bay & River Pilots Association*, 10 F.Supp. 43, 45 (E.D.Pa.1935).

Therefore, the court declares that defendants must reimburse the Corps of Engineers for the indirect costs detailed in the Stipulation, Clerk's entry # 1713.

weights to apply when calculating overhead %. Example: Est. overhead base × $10,000 × wt. = weighted cost which is a % of grant total." The court is afraid that it would have to take evidence before it could possibly understand what is meant by this statement. Neverthe-

less, because all sides agree as to the amounts included in both categories, that the court understand the method of determining the amount of overhead, to which this statement apparently refers, is not essential to resolution of the issue raised here.