CINCINNATI GAS & ELECTRIC CO. *v.* J.T.
LOHRER CONSTRUCTION CO.

(No. 83-CV-0039—Decided
August 22, 1983.)

Court of Common Pleas of
Clermont County.

*Mr. Richard G. McCue,* for plaintiff.
*Mr. Stephen M. Yeager,* for defendant.

RINGLAND, J. This matter came for trial before the court on August 15, 1983. Both plaintiff and defendant were present and represented by their respective counsel. The facts indicate that on or about March 12, 1981, defendant, J.T. Lohrer Construction Company, employed by Cincinnati Bell Telephone, was installing underground utilities along State Route 28 in Goshen Township, Clermont County, Ohio. While doing so it severed plaintiff's underground gas line, requiring plaintiff to expend for repairs the sum of $3563.10 for labor, material and vehicles.

Defendant stipulated the above facts although it indicated in its defense that it laid its utilities at a depth of five feet; and that it had been apprised by an agent or representative of plaintiff that the gas line was at a level of three feet six inches. The defendant also stipulated that the above amount was incurred as a result of the damage, but denies that it was negligent or proximately caused the damage. Plaintiff, on the other hand, denies that any representation was made as to the depth of the C.G. & E. pipe upon which defendant could reasonably rely, and, in any event, asserts that defendant had an affirmative duty to make test holes to determine the actual depth of the gas pipe. Further, Cincinnati Gas & Electric indicates that additional damages in the amount of $997.67 were owed to it by defendant for overhead costs or "jobbing overhead," to which defendant also excepts.

The court finds, contrary to the allegations of defendant, that at no time were actual markings painted on the highway concerning the depth of the pipe. The witnesses for C.G. & E. claim that at no time was it ever the custom to paint or indicate on the roadway the depth of pipes. One George Stegman, a representative of C.G. & E. who so testified, did indicate that his original map showed the depth of the pipe at three feet six inches and that the representative or employee of defendant observed this map. However, Stegman indicated that upon further inquiry by the employee of defendant that Stegman advised the employee not to rely on these maps. Other maps introduced into evidence show that the actual depth of the pipe was six feet.

Defendant claims that it was impossible for it to dig a test hole to check the depth of the pipe for the reason that the state of Ohio prohibited it from digging test holes in the pavement. However, there is no testimony indicating that it

was prohibited from digging test holes on either side of the easement and checking the depth and angle of the pipe to determine the depth between the two points, which the state of Ohio, of course, had no right to prohibit since these points were not on its easement.

The court, therefore, finds that based upon the weighing of the testimony and determining its reasonableness that defendant was solely negligent in failing to dig test holes to determine the actual depth of the gas main since it knew that the gas main existed and had been apprised by the agent of C.G. & E. not to take for granted any representations of the drawing as to the depth of the pipe. Even assuming the representations of C.G. & E. to be correct, maximum clearance would be one foot between the pipe being installed and the gas pipe. The degree of care to be exercised by defendant is determined by the danger to be apprehended, and the amount of care required to constitute ordinary care is commensurate with the danger involved. *Weaver* v. *Ry. Co.* (1907), 76 Ohio St. 164. See, also, *Thompson* v. *Ohio Fuel Gas Co.* (1967), 9 Ohio St. 2d 116 [38 O.O.2d 294]. Natural gas is explosive and where piped requires a high degree of care to ensure its safe transmission. See *Thompson, supra.* The rationale of *Thompson* indicates that not only does C.G. & E. have a high duty to maintain its pipes due to natural gas' dangerous nature, but any entity which knowingly involves itself with these pipes should also use a high degree of care. The court further finds that the plaintiff had its pipe sufficiently deep so that it in no way contributed to the negligence of defendant for comparative negligence determination purposes. *Thompson, supra.* Further, any representations which were initially made by plaintiff's agents were sufficiently disclaimed so that defendant should not have reasonably relied upon them. The court therefore makes an award of the stipulated amount of $3563.10 to plaintiff.

As to the second issue, defendant indicates that a twenty-eight percent jobbing overhead for $997.67 is too speculative, since it is based upon the estimated supervision and engineering costs, administrative costs and payroll costs, which went into preparing the pipe and determining the actual damages to the pipe. The defendant has cited the case of *Ohio Power Co.* v. *Huff* (1967), 12 Ohio Misc. 214 [41 O.O.2d 296], and *Dayton Power & Light Co.* v. *Puterbaugh* (March 7, 1980), Miami App. No. 79 C.A. 13, unreported, indicating that the determination of indirect overhead costs is too speculative.

Damages are not uncertain because they cannot be calculated exactly. It is sufficient if a reasonable basis of computation is afforded, although the results may be only approximate. *Eastman Kodak Co.* v. *Southern Photo Co.* (1927), 273 U.S. 359. An accountant testified that the indirect overhead cost was based on the best computations and calculations, which were made according to sound accounting principles used for public utilities. The fact that the accountant used sound accounting principles and the method by which she derived these costs were not refuted by any witnesses of defendant. Therefore, the court adopts the apparent majority holding of Ohio on this issue more fully set forth in *Warren Tel. Co.* v. *Hakala* (1957), 105 Ohio App. 459 [6 O.O.2d 201], and *Cincinnati Bell Inc.* v. *Hinterlong* (1981), 70 Ohio Misc. 38 [24 O.O.3d 52].

Therefore, the court finds that the indirect overhead expense of $997.67 is sufficiently proved by a preponderance of the evidence and finds for the plaintiff accordingly.

*Judgment accordingly.*