**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0067n.06**
**Filed: January 25, 2006**

**No. 04-4390**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROSALIE DEVONSHIRE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THE JOHNSTON GROUP FIRST | ) | NORTHERN DISTRICT OF OHIO |
| ADVISORS; BRADLEY M. JOHNSTON, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: Moore, Rogers, and McKeague, Circuit Judges.

**Rogers, Circuit Judge.** This is a diversity action for negligence. The plaintiff, Rosalie Devonshire, seeks damages for the loss of value to her stock portfolio allegedly caused by the defendants' inept handling of it during the 2000 recession. The defendants are The Johnston Group First Advisors, a financial advising LLC, and its one member, Brad Johnston, who allegedly mismanaged Devonshire's investments during the 2000 recession. Devonshire appeals the district court's grant of summary judgment to defendants. The district court granted summary judgment to defendants because "plaintiff has not brought forth evidence that she actually suffered damages as a result of defendants' alleged breach of duty." We affirm.

**I.**

Around May of 1999, Devonshire and her then-husband David Devonshire decided to divorce. The divorce became final on November 29, 2000. After filing for divorce, Devonshire opened two investment accounts with Commerce Bank for a total of approximately $100,000. Devonshire transferred management of these accounts to Johnston on March 10, 2000. After the finalization of the divorce, Devonshire's complete investment portfolio was put in her name on December 15, 2000. Devonshire entrusted management of this portfolio to Johnston.

Devonshire and Johnston met in or around August of 2000 to acquaint Johnston with Devonshire's situation and to foster a business relationship apart from her husband. Johnston sought to "develop a strategy" for Devonshire that was "specific and unique to meeting" her needs. Devonshire brought to the meeting "the scribblings of my monthly budget." Devonshire told Johnston that she wished to forestall discussion of a specific investment plan until after the divorce.

Relying on information from his prior dealings with Devonshire, Johnston sent to Devonshire after the divorce a letter outlining his recommendations for her portfolio. He dated the letter January 26, 2001. Devonshire received it and looked it over. Devonshire had no immediate conversations with Johnston regarding the investment strategy proposed in the letter. She objected to no part of Johnston's letter at that time. Devonshire later met with Johnston in March of 2001, however, because she saw from her periodic financial statements "[t]hat I was losing a lot of money on a monthly basis."

At the March 2001 meeting, Johnston gave Devonshire her February statement showing that

she had lost hundreds of thousands of dollars in February in addition to her other losses. Devonshire said that "[I] got very upset and looked at Brad and I said, sell something, sell it, just sell something. . . . I just didn't want to lose any more money." Devonshire did not pay close attention to economic developments and was generally unaware of the serious economic recession then occurring. Devonshire terminated her business relationship with Johnston in March of 2001.

Devonshire later brought this suit to recover money. Devonshire seeks damages for the period when Johnston managed her portfolio. She hired financial expert William McGinnis. McGinnis wrote a report and was deposed. In his report, McGinnis said that "Mr. Johnston was negligent in the handling of Ms. Devonshire's investments in that he did not adjust her portfolio in light of significant material changes in her financial position resulting from her divorce." McGinnis also said in his report that Johnston breached his fiduciary duty to Devonshire by investing "in securities which were unsuitable to [Devonshire's] investment profile." McGinnis' report says nothing about whether Devonshire has sustained damages, the quantity of any such damages, or whether Johnston's alleged breach of duty caused any damages.

In his deposition, McGinnis stated that Devonshire's investment profile in late 2000 was "fairly conservative." He said that Devonshire's portfolio was "overweighted in equities," especially in "risky segments" of the healthcare and technology industries. When asked which risky segments of the healthcare industry Devonshire had invested in, McGinnis responded: "I don't have her portfolio in front of me." When asked whether he had "undertaken any analysis to determine the losses in Rosalie Devonshire's account, during the time frame in your report," McGinnis

responded, "I have not."

McGinnis said that the proper way to calculate Devonshire's losses would be to compare the performance of Devonshire's portfolio with the performance of "a well-diversified, balanced portfolio with longer term growth objectives." He also stated that the market in late 2000 and early 2001 was "a very difficult market" and that Devonshire might have sustained losses even with a more diversified portfolio.

## II.

This court reviews a district court's grant of summary judgment de novo. *See Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1073 (6th Cir. 1997).

The district court properly granted summary judgment to defendants because Devonshire has provided no Rule 56 evidence that would permit a rational juror to infer that Johnston's alleged negligence caused her losses. In Ohio, to recover in a negligence action the plaintiff must prove: (1) the existence of a duty, (2) a breach of the duty, (3) and "an injury resulting proximately therefrom." *Jeffers v. Olexo*, 539 N.E.2d 614, 616 (Ohio 1989).

"A proximate cause of any given result is that cause which in the natural and continued sequence of events contributes to produce the result, and without which it would not have happened." *Xirafakis et al. v. Custodio*, 2005 Ohio 2707, ¶ 16 (Ohio Ct. App. 2005). The Ohio Court of Appeals has elaborated:

> While difficult to define, proximate cause is generally established where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act. Essentially, a plaintiff must present evidence upon which a trier of fact may reasonably determine that it is more likely than not that the negligence of a defendant was the direct or proximate cause of the plaintiff's injury. It is also well-settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the breach of duty caused the particular damage is not sufficient as a matter of law.

*Whiting v. State Dep't of Mental Health*, 750 N.E.2d 644, 647 (Ohio Ct. App. 2001) (citations omitted). "If expert testimony is required to establish proximate cause, it must establish a probability and not mere possibility of the causal connection." *Jones v. Med. Mut. of Ohio*, 2004 Ohio 746, ¶ 9 (Ohio Ct. App. 2004).

The district court properly granted summary judgment to defendants because, even assuming that Johnston was negligent, Devonshire has provided no evidence tending to prove that Johnston's alleged negligence caused any part of her losses. None of the Rule 56 evidence could allow a rational trier of fact to conclude that Johnston caused her losses that would not have occurred anyway during the 2000 recession.

Devonshire claims that Ohio law makes it inappropriate for a federal court to reach a decision on the element of proximate cause at the summary judgment phase. Devonshire argues that when the facts are sufficient to establish duty, breach and the existence of damages a jury must decide the issue of proximate cause.

Nevertheless, assuming that Ohio forbids its courts from determining the issue of proximate

cause at the summary judgment phase, federal courts must obey Federal Rule of Civil Procedure

56(c), which instructs federal courts to grant summary judgment on substantive legal issues,

proximate cause included, when there are no genuinely disputed issues of material fact and the

moving party is entitled to judgment as a matter of law.  Because Rule 56(c) directly covers the

summary judgment issue here, this court may apply different state law only if Rule 56(c) cannot

rationally be characterized as procedural.  *See Walker v. Armco Steel Corp*., 446 U.S. 740, 748

(1980) ("The [*Hanna*] Court explained that where the Federal Rule was clearly applicable . . . the

test was whether the Rule was within the scope of the Rules Enabling Act, 28 U.S.C. § 2072, and

if so, within a constitutional grant of power such as the Necessary and Proper Clause of Art. I.");

*McInnis v. A.M.F., Inc*., 765 F.2d 240, 244 (1st Cir. 1985) ("federal rules purporting to govern

procedural matters, which are duly passed by Congress, shall be presumed constitutionally valid

unless they cannot rationally be characterized as rules of procedure") (citing *Hanna*, 380 U.S. at

471).  Under this test Rule 56(c) is of course procedural.  That Ohio might prevent its own courts

from determining proximate cause at the summary judgment phase is irrelevant here.[1]

---

[1] In any event, we do not read the cases cited by Devonshire to say that the issue of proximate
cause may not be decided at the summary judgment phase.  *See Welch v. Bloom*, 2004 Ohio
3168, ¶ 7 (Ohio Ct. App. 2004); *Strother v. Hutchinson*, 423 N.E.2d 467 (Ohio 1981)  (noting
that a trial court may direct a verdict if "reasonable minds could come to but one conclusion
upon the evidence submitted," but finding that reasonable minds could differ in the case before
it); *Whiteleather v. Yosowitz*, 461 N.E.2d 1331 (Ohio Ct. App. 1983).  Whereas *Welch* in ¶ 7 says
nothing about proximate cause, the whole of *Strother* says nothing about summary judgment.
*Welch* addresses proximate cause in ¶ 11.  There *Welch* says that courts must resolve the issue of
proximate cause at the summary judgment phase if the facts are undisputed and the plaintiff's
evidence requires mere speculation:

> Normally, the issue of proximate cause involves questions of fact and cannot be
> resolved by means of summary judgment. However, if the facts are undisputed,

The district court properly granted summary judgment to defendants because Devonshire failed to supply any Rule 56 evidence tending to prove that Johnston's alleged negligence caused any of her losses in the stock market. The complete lack of evidence of proximate cause also makes it impossible for any trier of fact to approximate the magnitude of her recoverable losses. Only those losses proximately caused by Johnston's tortious actions could be awarded as damages—an amount impossible to reasonably estimate given that no such causation has been shown. *Cf. Cincinnati Bell, Inc. v. Hinterlong*, 437 N.E.2d 11, 16 (Hamilton County Mun. Ct. 1981) (noting that damages must be calculable to "that degree of certainty of which the nature of the case will admit.").

## III.

For the foregoing reasons, the district court's judgment is **AFFIRMED**.

---

the issue becomes a question of law which can be determined on summary judgment. If the plaintiff's quantity or quality of evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event at issue, then the defendant is entitled to summary judgment as a matter of law.

*Welch*, 2004 Ohio 3168, at ¶11 (citations omitted).