JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Theofanis Eleftherios Xirafakis, in his individual capacity and on behalf of the Estate of Eleftherios Xirafakis, deceased,[1] appeals the trial court denying his motion for a new trial in this medical malpractice case.
 {¶ 2} At the time of his death in June 1997, decedent was 47 years old. On October 17th of the preceding year, decedent was diagnosed with bronchitis by his primary care physician, Dr. Ramon J. Custodio. That same day, after seeing Dr. Custodio, decedent went to defendant Med Center One, a local urgent care facility operated under the aegis of defendant Robinson Memorial Hospital.[2]
 {¶ 3} At Med Center One, decedent complained of shortness of breath and chest tightness. Dr. Vo treated decedent. A chest x-ray was taken and decedent was diagnosed with pneumonia. Dr. Vo did not order an EKG or prescribe any prescriptions for decedent. Instead, Dr. Vo instructed decedent to see Dr. Custodio the next day for a follow-up.
 {¶ 4} Over the next several months, decedent continued to be treated by Dr. Custodio and Dr. Kenneth Rupp for recurring bronchitits. By May 1997, decedent's condition had deteriorated and he was diagnosed with biventricular heart failure. Decedent underwent cardiac bypass surgery at the Cleveland Clinic Foundation. Within days of being discharged from the hospital, however, decedent died.
 {¶ 5} Plaintiff filed suit and the case proceeded to trial. The jury determined that Dr. Vo had been negligent for failing to do an EKG in order to ascertain whether decedent might have been suffering from an abnormal heart condition. Despite finding Dr. Vo negligent, however, the jury returned a verdict in favor of defendants because plaintiff had not demonstrated that their actions/inactions proximately caused decedent's death.
 {¶ 6} Plaintiff timely filed a motion for new trial, which the court denied. Appealing that order, plaintiff presents one assignment of error:
The trial judge abused her discretion by overruling plaintiff-appellant's motion for new trial notwithstanding the fundamental evidentiary flaw in the jury's verdict.
 {¶ 7} Plaintiff argues that the manifest weight of the evidence[3]
is against the jury's verdict and, therefore, the trial court erred when it denied his motion for a new trial.
 {¶ 8} Civ. R. 59(A)(6), authorizes the trial court to grant a motion for new trial if "[t]he judgment is not sustained by the weight of the evidence * * *." Civ.R. 59(A)(6); See Kolomichuk v. Grega, (Sept. 20, 2001), Cuyahoga App. No. 78870, 2001 Ohio App. LEXIS 4210, at *5. A new trial should be granted only when the jury's verdict is not supported by "some competent, credible evidence going to the essential elements of the case * * *." Kolomichuk, 2001 Ohio App. LEXIS 4210, at *5, citing StarBank National Assn. v. Cirrocumulus Ltd. Partnership (1997),121 Ohio App.3d 731, 700 N.E.2d 918.
 {¶ 9} On appeal the propriety of the trial court's decision on this motion is reviewed under an abuse of discretion standard. Rohde v.Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. "A reviewing court must view the evidence favorably to the trial court's action rather than to the jury's verdict." Chaffins v. MohamedAl-Madani, Portage App. Nos. 2002-P-0037 and 2003-P-0090, 2004-Ohio-6703, at ¶ 75, citing Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 1996-Ohio-311, 659 N.E.2d 1242.
 {¶ 10} In the case at bar, plaintiff argues that he presented uncontroverted evidence that if Dr. Vo had ordered an EKG decedent's "cardiac condition would most likely have been found and the Decedent properly treated while there was still time to save him." Plaintiff's Brief on Appeal, at 7.
 {¶ 11} When decedent went to Med Center One on October 17, 1996, he provided his medical history informing Dr. Vo that he was a diabetic and a heavy smoker.[4] Decedent did not relate any prior history of heart ailments. A chest x-ray was taken and decedent was diagnosed with pneumonia. Even though Dr. Vo knew that decedent had an increased chance for silent heart attacks because of his diabetes, he did not order an EKG. Instead, decedent was instructed to see his primary physician the next day. The parties agree that after seeing Dr. Vo on October 17th, decedent returned to Dr. Custodio on at least eight separate occasions in 1996 and 1997. By November 1996, decedent seemed cured of bronchitis.
 {¶ 12} By January 22, 1997, however, decedent returned to Dr. Custodio, again complaining of chest congestion and coughing. Dr. Custodio again diagnosed decedent with bronchitis and treated him accordingly. By February 13, 1997, his eighth visit since seeing Dr. Vo, decedent's lungs were clear and his heart sounds were normal.
 {¶ 13} On April 1, 1997, decedent saw Dr. Rupp. Decedent complained of fatigue and breathing problems. Dr. Rupp diagnosed bronchitis and he treated decedent with antibiotics and an inhaler. A subsequent chest x-ray was also consistent with bronchitis. On a follow-up visit with Dr. Rupp, decedent stated he was feeling better. A May 5th visit showed no further signs of bronchitis.
 {¶ 14} On May 28, 1997, however, decedent went to the emergency room at Robinson Memorial Hospital. There, decedent was diagnosed with congestive heart failure. Decedent was transferred to the Cleveland Clinic, where he underwent cardiac bypass surgery because of severe coronary atherosclerosis. Following his discharge from the Clinic on June 17, 1997, decedent died at home on June 21, 1997, approximately eight months after he was seen by Dr. Vo.
 {¶ 15} During trial, plaintiff argues that two of his medical experts, Dr. Robert Stark and Dr. Cleland Blake, conclusively testified that Dr. Vo's failure to do an EKG in October 1996 was the proximate cause of decedent's death.
 {¶ 16} "A proximate cause of any given result is that cause which in the natural and continued sequence of events contributes to produce the result, and without which it would not have happened." Monnin v. FifthThird Bank of Miami Valley, N.A. (1995), 103 Ohio App.3d 213, 224,658 N.E.2d 1140, citing 70 Ohio Jurisprudence 3d (1986), 97, Negligence, Section 37.
 {¶ 17} In Ohio, it is well-settled that the credibility of an experts' conclusions and the relative weight they are afforded are determinations left to the trier of fact. State v. Nemeth (1998), 82 Ohio St.3d 202,1998-Ohio-376, 694 N.E.2d 1332.
 {¶ 18} Both plaintiff's experts in the case at bar testified that if an EKG would have been done on October 17, 1996, it would have been abnormal. Dr. Stark specifically testified as follows:
Q: And had he undergone treatment in October of 1996, to a reasonable degree of medical probability, would that sudden cardiac death have been avoided in June of 1997?
A: More likely than not, yes.
* * *
Q: Do you have an opinion to a reasonable degree of medical probability whether the substandard medical care provided to Larry on October 17, 1996, by the employees of Robinson Memorial Hospital including Dr. Vo, was a direct and proximate cause of Larry's death?
A: I do.
Q: What is that opinion?
A: I think it was a cause.
Tr. 293, 296.
 {¶ 19} On cross-examination, Dr. Stark admitted, however, that most of decedent's complaints and physical symptoms were just as consistent with a pneumonia diagnosis as a diagnosis of congestive heart failure. He also admitted that by May 1997, decedent was showing the classic symptoms of congestive heart failure, symptoms not present in October 1996.
 {¶ 20} Dr. Stark further acknowledged that after Dr. Vo had seen decedent on the 17th, he called Dr. Custodio, who agreed with Dr. Vo's decision to send decedent home and to follow-up with Dr. Custodio the next day. Dr. Stark also admitted that decedent's condition improved under Dr. Custodio's antibiotic therapy and that such improvement is consistent with having had pneumonia. Tr. 305-327.
 {¶ 21} The testimony of defendants' expert, Dr. Charles Emerman,[5]
is consistent with Dr. Stark's testimony on cross-examination. Dr. Emerman stated that when decedent was evaluated by Dr. Vo on October 17th, he primarily presented symptoms associated with a respiratory infection which improved after he was treated by Dr. Custodio. Tr. 612-613.
 {¶ 22} Plaintiff also presented the expert testimony of Dr. Cleland Blake, a pathologist. Dr. Blake testified that he traveled to Greece where decedent was buried and had decedent exhumed in November 1998, in order to perform an autopsy to determine the cause of death. Dr. Blake further testified that when he performed the autopsy he discovered scarring in decedent's heart. That scarring, Dr. Blake opined, would probably have been seen on October 17, 1996 if Dr. Vo had done an EKG. Dr. Blake testified as follows:
Q: If Mr. Xirafakis's problem had been diagnosed on October 17th of 1996 instead of May 1997, in your opinion, would his chances for survival have been better?
A: His chances would have been better.
* * *
Q: In your opinion, within a reasonable degree of medical probability, did Mr. Xirafakis die because of his unattended successful heart attacks resulting in dead muscle that he suffered on October 17, 1996, and May 1997?
A: I would say unidentified and unattended. Yes, he did die because of this additional burden of dying muscle fibers.
Q: Now if there was an EKG performed on October 17th of 1996 when Mr. Xirafakis went to Med Center One, would that EKG have been abnormal at that point?
A: In high likelihood it would have been.
Q: And what is the reason for that, Doctor? Why would it have been abnormal?
A: It would have been abnormal because of the scars that were there for a longer period of time.
Q: The portion of the scarring tissue that you found, that was over a year old?
A: That's correct.
Q: And when you performed the autopsy, what you had found was exactly the condition that the heart was in when Mr. Xirafakis died in June 1997; isn't that true?
A: Yes. Except for the changes incurred by the embalming.
Tr. 394-397.
 {¶ 23} On cross-examination, defense counsel questioned Dr. Blake's prior testimony that decedent's heart scars were over a year old. Dr. Blake's assertion was substantially undermined when he admitted that he could not age scars that are over six months old. Dr. Blake's testimony, therefore, was inconclusive on the question of whether decedent's scarring would have been present if an EKG were taken on October 17, 1996. Decedent died in June 1997 — eight months after his October 1996 visit to Dr. Vo. Therefore, Dr. Blake's testimony could not conclusively establish what Dr. Vo would have seen had he done an EKG eight months before decedent died.
 {¶ 24} Dr. Blake also conceded that death is a known risk of cardiac bypass surgery. That risk, Blake acknowledged, would have existed even if decedent had received bypass surgery earlier than he did. Tr. 397-408.
 {¶ 25} Plaintiff further argues that when you look at his experts' combined testimony, it is clear that the jury lost its way by not following part of the trial court's instructions on proximate cause. Plaintiff not only ignores Dr. Stark's and Dr. Blake's testimony during cross-examination, but then selectively focuses on only a portion of the trial court's jury instructions on proximate cause.[6]
 {¶ 26} When the trial court charged the jury, it gave the following instructions on proximate cause:
A party who seeks to recover for injury must prove not only that the other party was negligent, but also that such negligence was the proximate cause of death. Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces the death and without which it would not have occurred. Cause occurs when the death is a natural and foreseeable result of the act or failure to act.
There may be more than one proximate cause. When the negligent act or failure to act of one party continues, the negligence of another to produce the death, the negligence of each is a cause. It isn't necessary that the negligence of each occur at the same time or place nor [sic] that there be a common purpose or action.
A person is not responsible for injury to another if his negligence is a remote cause and not a proximate cause.
A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any jury [sic].
This does not mean that the law recognizes only one proximate cause of the death, consisting of only on [sic] factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time either independently or together to cause death. And in such a case, each may be a proximate cause.
Thus, the plaintiff, to sustain his legal burden on the issue of causation, needn't prove that the alleged negligence was a sole or only cause but only a proximate cause of the death claimed.
If a person is injured by the negligence of two or more persons who act independently and their acts combined and/or concur to proximately cause injury, each of the wrongdoers is liable to such person for the full amount of the damage.
 {¶ 27} Tr. 901-902. These instructions allowed the jury to conclude that Dr. Vo's failure to order an EKG in October 1996 was too remote in time to be deemed the proximate cause of decedent's death in June 1997.
 {¶ 28} Given Dr. Stark's and Dr. Blake's testimony on cross-examination, the jury could have decided that plaintiff failed to establish by a preponderance of the evidence that decedent had congestive heart failure on October 17, 1996. We underscore that portion of Dr. Blake's testimony where he was unable to state conclusively that the scarring he observed in November 1998 would have been present if an EKG were taken on October 17, 1996. Without proving that decedent had heart failure when he was seen by Dr. Vo, the jury could not conclude that an EKG would have shown a heart condition requiring hospitalization in October 1996.
 {¶ 29} The jury concluded that Dr. Vo was negligent in failing to do an EKG. It does not necessarily follow, however, that decedent's death was a natural and foreseeable result of Dr. Vo's negligence. The jury could properly conclude that plaintiff's expert testimony failed to establish that link. On this record, therefore, we conclude that plaintiff failed to establish that Dr. Vo's negligence was the proximate cause of decedent's death.
 {¶ 30} Accordingly, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial based upon the manifest weight of the evidence. Plaintiff's sole assignment of error is overruled.
Judgment accordingly.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and McMonagle, J., Concur.
[1] Plaintiff is the decedent's surviving son.
[2] Initially, plaintiff had named other defendants: Dr. Custodio, Dr. Phillip Kennedy, Dr. Kenneth Rupp, Dr. Luong Van Vo, Dr. Manju Vijayvangiya, and the Cleveland Clinic Foundation. By the first morning of trial, plaintiff had dismissed and/or settled with all defendants except Med Center One and Robinson Memorial Hospital. Trial proceeded against Med Center One and Robinson Memorial Hospital only. During trial, the parties stipulated that at all times relevant hereto, Dr. Vo and Dr. Vijayvangiya were employees of defendants.
[3] In a medical malpractice action, the plaintiff must produce evidence by expert testimony demonstrating all the following: 1) the acceptable medical standard of care; 2) the defendant's breach of that standard; and 3) that plaintiff's injuries were proximately caused by defendant's breach. Bruni v. Tatsumi (1976), 46 Ohio St. 2d 127,346 N.E.2d 673.
[4] Dr. Vo testified that decedent admitted smoking two packs of cigarettes per day.
[5] Although defendants raise and discuss the issue of "group think" in their brief, we decline to address it because it was not a liability theory plaintiff was pursuing at trial. See, Defendants' Reply Brief on Appeal, at 2-3.
[6] In his appellate brief, plaintiff cites only a portion of the charge given by the court. That portion is as follows:
This does not mean that the law recognizes only one proximate cause of the death, consisting of only on [sic] factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time either independently or together to cause death. And in such a case, each may be a proximate cause.
Thus, the plaintiff, to sustain his legal burden on the issue of causation, needn't prove that the alleged negligence was a sole or only cause but only a proximate cause of the death claimed.
If a person is injured by the negligence of two or more persons who act independently and their acts combined and/or concur to proximately cause injury, each of the wrongdoers is liable to such person for the full amount of the damage.
Plaintiff's Brief, at 4.